UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LORI W.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:20cv415 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant has not engaged in substantial gainful activity since December 12,

2017, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: osteoarthritis of the left hip, degenerative disc disease of the lumbar spine, obesity, asthma, and bipolar disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: avoid exposure to excessive amounts of fumes, dusts, and poor ventilation; perform simple, routine and repetitive tasks, not at a production rate pace; make simple work-related decisions; and occasionally interact with supervisors, coworkers, and the public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on February 9, 1975 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 12, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 21-39).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on August 17, 2021.  On October 5, 2021 the defendant

filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on November 2, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff was born on February 9, 1975. (Tr. 85). At the time of filing, she was 43 years old. (Tr. 85). Plaintiff did not complete high school. (Tr. 38). She has no past relevant work. (Tr. 38).

In January of 2018, Plaintiff presented to Dr. David B. Bosscher of Holland Community Health Center with complaints of shoulder pain, hip pain, depression and anxiety. (Tr. 351). Dr. Bosscher suggested physical therapy and pain medication for Plaintiff's shoulder and diagnosed

"Perthe's Disease" with regard to her hip. (Tr. 351).

In February, Plaintiff presented to Dr. Sara Smart and complained of continued shoulder pain. Range of motion was diminished on the left and painful. Dr. Smart noted "diffuse weakness in the upper extremities" and diminished pinprick sensation in the left fourth and fifth fingers. (Tr. 356).

In April of 2018, Plaintiff presented for a consultative psychological examination with Dr. Craig A. Nordstrom at the request of the Indiana Disability Determination Bureau. (Tr. 370). Dr. Nordstrom diagnosed major depressive disorder, PTSD, panic disorder, and cocaine use disorder in remission. (Tr. 373). Dr. Nordstrom opined "Her ability to sustain concentration is fairly poor. She has significant difficulty sustaining relationships and interacting, ostensibly due to a lack of trust for others." (Tr. 374).

On May 15, 2018, Plaintiff presented to Damian Family Care Center for treatment of her mental health conditions. After examination, clinicians diagnosed bipolar disorder, current episode depressed, mild or moderate severity. (Tr. 450).

On June 11, 2018, Plaintiff presented to Dr. Yakov Perper for pain management and physical therapy services. Dr. Perper noted chronic pain in left hip due to pelvic fracture in 2017 and "Leg Calve Perthes." (Tr. 394). He noted difficulty with ambulation and prolonged sitting and standing. (Tr. 394).

One day later, Dr. Perper summarized a recent lumbar MRI which revealed "disc herniation at L3-4 level, with L3 nerve root impingement." (Tr. 396). Full review of that MRI indicates impingement of left L3 nerve root, abutment of exiting L5 nerve root, and flattened thecal sac. (Tr. 407). On exam, he observed widespread pain and tenderness, antalgic gait,

5

positive slump test, positive Patrick's test, and leg length discrepancy with right leg longer than left. (Tr. 396-397).

On June 18, 2018, Plaintiff underwent MRI of her left hip due to chronic left hip pain. (Tr. 405). That imaging demonstrated left femoral and acetabular dysplasia, degenerative tearing left hip labrum, bilateral trochanteric bursitis with multifocal lobular and septated cystic lesions, and left hip joint space narrowing with "subcortical edema left acetabular roof." (Tr. 405).

Plaintiff returned to Damien Center for mental health treatment on June 19th. Mental status examination revealed intense, depressed and anxious affect; and superficial cooperation. (Tr. 442-443). Diagnoses were bipolar disorder and PTSD. (Tr. 442-443).

On June 26, 2018, Dr. Perper wrote a letter which indicated he certified "that [Plaintiff] has been undergoing treatment in my office for pain management. Due to her condition she is disabled. I recommend that she have a permanent bed pass as she will be on bed rest." (Tr. 376). The same day, Dr. Perper provided Plaintiff "Left L3 and L4 Transforaminal Epidural Steroid Injection." (Tr. 398). Likewise, a "lumbar epiduragram" demonstrated "delineated L4 nerve root." (Tr. 400).

Plaintiff returned to Dr. Perper on July 24, 2018. (Tr. 401). His examination indicated antalgic gait, positive L-spine extension test, and widespread pain and tenderness. (Tr. 401). Observations in August were identical. (Tr. 403).

In October, Plaintiff returned to Damien Center for mental health therapy. (Tr. 435). Clinicians noted she had previously missed one month of medications, "She did not give any clear logical reasons for her lack of follow up and got irate when asked, presently she lives in a shelter, Patient has poor insight into her illness and refusing all meds except benzo. Angry and

6

irritable today." (Tr. 435). Clinicians attributed her non-compliance with treatment to "lacks insight into her illness." (Tr. 436).

Dr. Isaac Kreizman, Director of Rehabilitation Medicine at Pain and Rehabilitation Services, wrote multiple letters on Plaintiff's behalf. He noted his belief she was "disabled," but also specifically cited numbness and weakness of the upper and lower extremities "making it very difficult for her to push, pull, lift heavy objects" or "sit, stand, or walk for long periods." Further he notes extreme difficulties with normal transfers. Like Dr. Perper, he recommended Plaintiff be on "bed rest." (Tr. 377-393).

In support of remand, Plaintiff first argues that the ALJ erred by not submitting two MRI scans to expert review. The state agency reviewing physician, Dr. Corcoran, reviewed Plaintiff's record and opined upon her functional capacity prior to MRIs of both her lumbar spine and left hip being submitted into the record. The Commissioner acknowledges that Dr. Corcoran did not have the benefit of the two MRIs, but argues that the MRIs did not establish any functional limitations but merely served to clarify problems of which Dr. Corcoran was already aware. Plaintiff, however, argues that the MRIs demonstrated etiology commensurate with threshold imaging required to satisfy a Listing for conditions of the spine. Out of an abundance of caution, this Court will remand on this issue so that the MRIs in question can be submitted for expert review. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *Kemplen v. Saul*, 844 F. App'x 883 (7th Cir. 2021).

Next, Plaintiff argues that the ALJ erred in assessing the mental RFC by improperly evaluating the opinions of state agency psychologist Dr. Garcia, Ph.D. and examining

7

psychologist Dr. Nordstrom, Psy.D. Plaintiff contends that the ALJ failed to provide a logical explanation for her dismissal of the state agency psychologists' opinions of moderate "checkbox" limitations in Plaintiff's ability to "maintain attention and concentration for extended periods"; to "accept instructions and respond appropriately to criticism from supervisors"; and to "respond appropriately to changes in the work setting." (Tr. 94). Plaintiff further contends that the ALJ did not explain her departure from the psychologists' narrative opinions that Plaintiff was restricted to work only requiring "superficial" interactions with co-workers and supervisors. (Tr. 94). As discussed more fully below, this Court agrees with the Commissioner that the ALJ explained her evaluation of the psychologists' opinions.

With respect to the detailed forms completed by State agency medical consultants, an ALJ may reasonably rely on the medical consultant's narrative opinion that is viewed as consistent with the specific medical findings also expressed in the form. *Pavlice*k, 994 F.3d 777, 783 (7th Cir. 2021). Here, Dr. Garcia stated that Plaintiff had "no more than moderate limitations" in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 93-94). Summarizing her statements, Dr. Garcia narratively opined that Plaintiff could "understand, remember, and carry out unskilled tasks," "relate on a superficial and ongoing basis with co-workers and supervisors," "attend to tasks for a sufficient period to complete tasks," and "manage the stresses involved with work". (Tr. 94). The ALJ found Dr. Garcia's opinion "persuasive". (Tr. 37). The ALJ noted that Dr. Garcia's findings of "no more than moderate" limitations were consistent with the record as a whole. (Tr. 37).

Plaintiff asserts that there were material differences between Dr. Garcia's specific medical findings, her narrative opinion, and the ALJ's findings as to Plaintiff's mental functional

8

limitations. Plaintiff argues that the ALJ failed to resolve these differences. However, there was no material difference between Dr. Garcia's findings, his narrative opinion, and the ALJ's findings. Specifically, Plaintiff asserts that the "moderate" limitations stated by Dr. Garcia were "potentially disabling". However, such "moderate" limitations are not as extreme as Plaintiff argues. That is, "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair….' As the Commissioner points out, 'fair' in ordinary usage does not mean 'bad' or 'inadequate.'" *Pavlice*k, 994 F.3d at 783 (citation omitted). Moreover, Dr. Garcia's actual narrative opinion indicated that those moderate limitations were not as extreme as Plaintiff interprets them to be.

Plaintiff also asserts that the ALJ's finding of only occasional interactions with others was materially different from Dr. Garcia's opinion of relating only on a "superficial and ongoing basis". (Tr. 94). Plaintiff asserts that superficial interactions are "substantially more limiting" than occasional interactions, but Plaintiff does not identify any record evidence to support her assertion, and Dr. Garcia's statements indicated only moderate limitations in this area. (Tr. 93-94). Plaintiff also contends that she would be unable to work for "10 percent of the work day" or have "more than one absence per month" from work, but Plaintiff has not identified evidence of such limitations.

Plaintiff states that the ALJ was required to consider "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, examiner status, and specialization" when evaluating a medical opinion. However, an ALJ is not required to articulate her consideration of those factors. *See* 20 C.F.R. § 416.920c(b)(2) ("We may, but are not required to, explain how we considered the factors

in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions").

Plaintiff argues that there was some material difference between Dr. Garcia's "checkbox limitations" and her narrative opinion. However, Plaintiff does not have the expertise to interpret Dr. Garcia's medical findings. Plaintiff also claims that the ALJ ignored such "checkbox limitations", but Plaintiff does not identify or explain which specific functional limitations were ignored. At best, Plaintiff merely interprets Dr. Garcia's statements and opinion differently, but the existence of different interpretations does not mean that the ALJ's finding was unsupported by substantial evidence.

Plaintiff also contends that the ALJ did not explain her consideration of Dr. Nordstrom's report. However, Dr. Nordstrom did not provide a formal opinion as to Plaintiff's work-related functional limitations. Rather, Dr. Nordstrom stated that Plaintiff was "not currently under psychiatric care" and that her "average cognitive ability and her long-term memory appears to be fair. Her ability to sustain concentration is fairly poor. She has significant difficulty sustaining relationships and interacting". (Tr. 374).

This Court agrees with the Commissioner that the ALJ explained her consideration of Dr. Nordstrom's report. The ALJ noted that Dr. Nordstrom's opinions were "vague and non-specific in terms of the claimant's abilities and limitations in performing work-related activities". (Tr. 37). The ALJ also observed that Dr. Nordstrom's opinion was unsupported by his own testing, noting specifically the testing of Plaintiff's concentration and Dr. Nordstrom's reliance on Plaintiff's own reports "rather than his own clinical findings, "in which the claimant presented as cooperative and polite, with logical and goal-directed thought processes and behavior". (Tr. 37).

Thus, the ALJ found Dr. Nordstrom's opinions to be "somewhat persuasive to the extent that they are consistent with his clinical findings and with the medical evidence as a whole, though they are not specific opinions that can be more persuasive in terms of the claimant's abilities or limitations" (Tr. 38). Plaintiff argues that Dr. Nordstrom's opinion was not vague. But Plaintiff has not identified any part of Dr. Nordstrom's opinion that refers to, for example, a quantifiable functional limitation "in terms of the claimant's abilities and limitations in performing workrelated activities" (Tr. 37).

Plaintiff also argues that Dr. Nordstrom's opinion was consistent with Dr. Garcia's "checkbox opinions".  However, as discussed above, the moderate limitations discussed by Dr. Garcia were not as limiting as Plaintiff argues. See *Pavlice*k, 994 F.3d at 783.

This Court finds that the ALJ properly explained her reasons for resolving the conflicting medical evidence. Thus remand is not warranted on this issue.  However, as discussed above, the Court will order remand on the issue of medical expert review of Plaintiff's MRIs.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for proceedings consistent with this Opinion.


 Entered: December 14, 2021.


s/ William C.  Lee
William C. Lee, Judge
United States District Court